UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

WELTON MARSHALL, JR., KIMBERLY WILLIAMS, :
THE ADMINISTRATOR OF THE ESTATE OF JOHN :   **No. 19 Civ. 4741 (JMW)**
WILLIAMS and RAJAY JAMES, :
                                       :
                    Plaintiffs, :   **SECOND AMENDED**
                                         :   **COMPLAINT**
                                         :
         - against - :
                                         :

MARINE BULKHEADING, INC., ANTHONY :   **Jury Trial Demanded**
DESOUSA, THOMAS DESOUSA, and JOSEPH :
ANSELMO, :
                                         :
                    Defendants. :

------------------------------------------------------------------ X

       Plaintiffs Welton Marshall, Jr. ("Marshall, Jr."), Kimberly Williams, the Administrator of the Estate of John Williams ("Williams") and Rajay James ("James") (collectively "Plaintiffs") by and through their attorneys Kessler Matura P.C., complaining of Marine Bulkheading, Inc. ("MBI" or "Corporate Defendant"), Anthony DeSousa, Thomas DeSousa, and Joseph Anselmo ("Anselmo") (collectively "Defendants") allege as follows:

## **INTRODUCTION**

       1.      MBI is one of the Northeast's oldest and experienced marine contractors, performing work throughout New York City and New York State.[1]

       2.      While employed by Defendants, Plaintiffs were subjected to constant race discrimination because they are Black men.

       3.      For example, Plaintiffs were subjected to frequent racist slurs, demeaning racial language comparing Black men to animals, and comments about the genitalia of Black men.

---

[1] https://www.mbipiles.com/ (last accessed August 6, 2019).

4.     Marshall, Jr., Williams and James were called "nigger" by supervisor and head foreman Anselmo on multiple occasions.  Anselmo's use of the racial slur "nigger" was reported to MBI's owners and top management: Defendants Anthony DeSousa and Thomas DeSousa and MBI CFO and manager Michael DeSousa.

5.     Plaintiffs' coworkers, who are not Black, often commented on the obsessive and hostile nature of Anselmo's racist behavior and reported his behavior to MBI management.

6.     Despite the overt nature of Anselmo's racial hostility, MBI's management failed to respond to repeated complaints about and their own firsthand observation of Anselmo's behavior, and instead retaliated against Plaintiffs by terminating their employment.

7.     Anselmo is the most senior foreman at MBI, he earns one of the highest hourly rates, is able to select who he wants on a jobsite, and is able to punish and control employees by removing them from jobsites, suspending them and terminating them

8.     Anselmo made racist comments to Plaintiffs whenever he saw them.

9.     Anselmo's racially discriminatory behavior was well known at MBI.  Anselmo's behavior was reported to Defendants Anthony DeSousa and Thomas DeSousa and MBI CFO and manager Michael DeSousa.

10.     MBI also protected and promoted the flagrant racist behavior of high-level driller and foreman Michael Kane ("Kane") and foreman KC (last name unknown).

11.     Plaintiffs objected to Anselmo's racist behavior and complained to supervisory employees about Anselmo's racist comments, but this had no impact on Anselmo's discriminatory behavior or employment status.

12.     Anselmo, confident in his right to refer to his MBI subordinates using racial slurs, taunted Marshall, Jr. after he complained.

13.    Anselmo was correct in his belief that MBI would protect him and allow him to treat Black workers in a bigoted and unlawful manner.  Anselmo remains employed at MBI in his position as foreman.  Plaintiffs, along with several other Black employees have been terminated after complaining of race discrimination.

14.    Unfortunately, MBI's unlawful retaliatory conduct did not end with Plaintiffs' terminations. On August 22, 2019, shortly after Plaintiffs filed their Complaint alleging discrimination and harassment, MBI threatened to sue Plaintiffs in a transparent attempt to silence them from seeking to vindicate their rights under anti-harassment and discrimination laws.

15.    Specifically, MBI sent Plaintiffs' counsel a letter, which stated:

"I would now request that you advise your clients that upon the successful resolution of our defense, we fully intend to file our own actions in which we will seek substantial damages against . . . [Plaintiffs] for the harm and financial burden inflicted upon us because of these false allegations."

16.    MBI's threat was clearly an act of further retaliation.

17.    The threat to commence a baseless counterclaim against those who report race discrimination and retaliation is precisely the sort of conduct that sends a chilling message to Black workers: they will be punished for pursuing their legal right to employment free of degrading racist behavior from their bosses.

## **NATURE OF THE CLAIMS**

18.    The unlawful discrimination and retaliation described herein was committed in violation of Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"), New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq*. ("NYSHRL") and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 *et seq*. ("NYCHRL").

19.     Following commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the NYCHRL.

20.     Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION & VENUE

21.     Jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1331.

22.     The Court has supplemental jurisdiction over Plaintiffs' related claims arising under the NYSHRL and NYCHRL pursuant to 28 U.S.C. § 1367(a).

23.     Defendants maintain headquarters in Nassau County, at 512 Bay Court, Seaford, New York.

24.     Accordingly, this action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

*Plaintiffs*

25.     Plaintiff Marshall, Jr. is a Black man.

26.     Marshall, Jr. was employed by Defendants from approximately August 2013 to April 2019.

27.     Marshall, Jr. is a "person" entitled to "make and enforce contracts" pursuant to Section 1981(a)-(b).

28.     At all times relevant, Marshall, Jr. was an "employee" within the meaning of all applicable statutes.

29.     Deceased former Plaintiff John Williams was a Black man.

30.　Deceased former Plaintiff John Williams was employed by Defendants from approximately January 2, 2013 until April 16, 2019.

31.　Deceased former Plaintiff John Williams was a "person" entitled to "make and enforce contracts" pursuant to Section 1981(a)-(b).

32.　At all times relevant, deceased former Plaintiff John Williams was an "employee" within the meaning of all applicable statutes.

33.　Deceased former Plaintiff John Williams died on July 19, 2020.

34.　Kimberly Williams, was appointed the administrator of the Estate of John Williams on April 13, 2022.

35.　Kimberly Williams is familiar with deceased Plaintiff John Williams's allegations set forth in the Complaint, the First Amended Complaint and the Second Amended Complaint.

36.　Plaintiff James is a Black man.

37.　James was employed by Defendants from approximately October 2017 to April 2019.

38.　James is a "person" entitled to "make and enforce contracts" pursuant to Section 1981(a)-(b).

39.　At all times relevant, James was an "employee" within the meaning of all applicable statutes.

***Defendant MBI, Inc.***

40.　MBI is a marine construction company which performs an extensive range of public and private projects in New York City and throughout New York State.

5

41.     Upon information and belief, during all times hereinafter mentioned, MBI is a corporation organized and existing pursuant to the laws of the State of New York, doing business in the State and City of New York.

42.     Upon information and belief MBI performs extensive work within New York City for both public and private customers.

43.     MBI offers a range of services including the installation of conventional timber piles and foundation support systems.  MBI also offers design engineering, inspections, and rehabilitation of existing foundations.

44.     At all times hereinafter mentioned, MBI was and still is a "nongovernmental" entity for as per Section 1981(c).

45.     Upon information and belief, MBI maintains control, oversight, and direction over its operations and employment practices.

46.     Upon information and belief, during all times hereinafter mentioned, MBI is an "employer" within the meaning of all applicable statutes.

***Defendant Anthony DeSousa***

47.     Upon information and belief, and at all times hereinafter mentioned, Anthony DeSousa owns MBI.

48.     Upon information and belief, and at all times hereinafter mentioned, Anthony DeSousa is the President of MBI.

49.     Upon information and belief, and at all times hereinafter mentioned, Anthony DeSousa is the CEO of MBI.

50.     Upon information and belief, and at all times hereinafter mentioned, Anthony DeSousa maintains control, oversight, and direction over MBI's operations and employment practices.

51.     Upon information and belief, and at all times hereinafter mentioned, Anthony DeSousa supervised Plaintiffs' employment at MBI.

52.     Upon information and belief, during all times hereinafter mentioned, Anthony DeSousa is an "employer" within the meaning of all applicable statutes.

***Defendant Thomas DeSousa***

53.     Upon information and belief, and at all times hereinafter mentioned, Thomas DeSousa is the President of MBI.

54.     Upon information and belief, and at all times hereinafter mentioned, Thomas DeSousa is the CEO of MBI.

55.     Upon information and belief, and at all times hereinafter mentioned, Thomas DeSousa maintains control, oversight, and direction over MBI's operations and employment practices.

56.     Upon information and belief, and at all times hereinafter mentioned, Thomas DeSousa supervised Plaintiffs' employment at MBI.

57.     Upon information and belief, during all times hereinafter mentioned, Thomas DeSousa is an "employer" within the meaning of all applicable statutes.

***Defendant Joseph Anselmo***

58.     Upon information and belief, and at all times hereinafter mentioned, Anselmo is the head foreman at MBI.

59.     Upon information and belief, and at all times hereinafter mentioned, Anselmo maintains control, oversight, and direction over MBI's operations and employment practices.

60.     Upon information and belief, and at all times hereinafter mentioned, upon information and belief, and at all times hereinafter mentioned, Anselmo supervised Plaintiffs' employment at MBI.

## **FACTS**

61.     Marshall, Jr. and Williams worked at MBI for over six years.

62.     James worked at MBI for approximately one and a half years.

63.     Plaintiffs worked extensively in New York City.

64.     Some of the jobsites that Williams worked at include: 55-01 Myrtle Avenue, Queens, NY; 52 Maiden Lane, Manhattan, NY; 1277 East 14th Street, Brooklyn, NY; Bartow Avenue, Bronx, NY; Hicks Street, Brooklyn, NY; 52 11th Avenue, Manhattan, NY; 2654 Queens Boulevard Queens, NY; 149th and Bergen Avenue, Bronx, NY; West 52nd Street, Manhattan, NY; 310 Briggs Avenue, Brooklyn, NY; 2960 86th Street, Brooklyn, NY.

65.     Some of the jobsites that Marshall, Jr. worked at include: 1277 East 14th Street, Brooklyn, NY; 1185 Rockaway Avenue, Brooklyn, NY; 359 Clarkson Avenue, Brooklyn, NY; 1704 Ocean Avenue, Brooklyn, NY; 238 North 9th Street, New York, NY; 9080 179th Street, Queens, NY; 340 East 5th Avenue, New York, NY; 861 Pugsley Avenue, Bronx, NY; 699 Brush Avenue, Bronx, NY; 320 Wythe Avenue, Bronx, NY; 238 North 9th Street, Brooklyn, NY; 97 Georgia Avenue, Brooklyn, NY; 75-15 Northern Boulevard, Queens, NY; 566 Bergen Avenue, Bronx, NY; 48-11 Vernon Boulevard, Queens, NY; 34-12 Collins Place, Queens, NY; 9-03 44th Road, Queens, NY; 89-14 169th Street, Queens, NY.

66.     Some of the jobsites that James worked at include: 861 Pugsley Avenue, Bronx, NY; 59-02 99th Street, Flushing, NY 11368; 5-25 47th Road, Long Island City, NY; 59-02 99th Street, Flushing, NY; 5-26 45th Avenue, Long Island City, NY; 556 Bergen Avenue, Bronx, NY; 55-05 Myrtle Avenue, Ridgewood, NY; 12 Eckford Street, Brooklyn, NY; 34-12 Collins Place, Flushing, NY; 75-28 Queens Boulevard, Flushing, NY; 644 East 14th Street, New York, NY.

67.     During Plaintiffs' employment at MBI they were repeatedly and consistently subjected to racial harassment and discrimination.

68.     Plaintiffs complained about this discrimination to MBI management and were subsequently terminated in retaliation for their complaints.

69.     MBI head foreman Anselmo discriminated against Plaintiffs for the duration of their employment.

70.     On multiple occasions, in front of several witness, Anselmo called Plaintiffs and other Black workers "niggers."

71.     Anselmo declared, "you niggers are lazy," on multiple occasions throughout Plaintiffs' employment.

72.     Anselmo's use of the racial slur "nigger" was reported to MBI owners and management by Plaintiffs and their co-workers on multiple occasions.

73.     Anselmo obsessively spoke about race, including activities that are acceptable for black people to perform, locations that are acceptable for black people to frequent and speculation about the penis size of black men

74.     For example, in approximately May 2017, Anselmo arrived at a jobsite in the Bronx where Marshall, Jr. was working and addressed him as "nigger."

75.     Marshall, Jr. called Anthony DeSousa and told him that Anselmo had called him a "nigger."  Marshall, Jr. told Anthony DeSousa that this was not the first time that Anselmo had called him a "nigger."  Anthony DeSousa replied, "Welton, we can't have this, I'll take care of it. We're not like this."

76.     Anthony DeSousa also stated, "The next time it happens we will have a meeting in the office with the family.  If it happens again, you can smack him on his mouth, you won't get fired or nothing."

77.     Despite Anthony DeSousa's statements, Anselmo was not disciplined, retained his job as head foreman, and continued his racially discriminatory behavior.

78.     After Marshall, Jr.'s complaint to Anthony DeSousa about Anselmo calling him a "nigger,"  Anselmo approached Marshall, Jr. and said, "You can call on me all you want, I don't give a fuck."

79.     In approximately December 2018, Marshall, Jr. and his coworker were working in the MBI yard in Seaford, New York.  At approximately 7:30 a.m., Anselmo walked past Eddie, who is white, and said, "good morning."  Anselmo then turned to Marshall, Jr. and said, "Welton, what are doing in the yard, you are my yard nigger today."  Anselmo then stated, "don't be offended, that is just a term we use in the company," and walked away.

80.     Eddie went into the office and reported to MBI manager and CFO Michael DeSousa that Anselmo just called Marshall, Jr. a "nigger."

81.     Michael DeSousa called Marshall, Jr. and said, "Welton, I apologize . . . we are not like that."

82.     Marshall, Jr. replied, "I just want to work, and I have to deal with this guy every day."

83.     Defendants did not discipline Anselmo after Marshall, Jr. and Eddie's report of discrimination.  Anselmo continued to make racially discriminatory remarks to and about Black MBI workers.

84.     Starting in approximately November 2018 until the end of Williams's employment, Anselmo referred to Williams as a "silverback gorilla" every time he saw him or spoke about him.

85.     The "silverback gorilla" nickname was widely gossiped about at MBI and was humiliating to Williams.

86.     Throughout Plaintiffs' employment, Anselmo regularly made comments about watermelon and fried chicken when he saw Black workers eating.  These comments had nothing to do with the content of the meals the Black workers were eating and were simply made to draw attention to painful racist tropes.

87.     Anselmo stated, "I bet your dick is a foot long" to Marshall, Jr. on multiple occasions.

88.     Anselmo stated, "You guys are hung" to Marshall III on multiple occasions.

89.     Anselmo made racist non-sequiturs about any situation that Black MBI workers were discussing, constantly harping on their race.

90.      For example, in winter 2018, when discussing weekend skiing plans, Anselmo told Marshall, Jr. that, "Black people don't ski," and that he "would stick out like a sore thumb."

91.     In approximately October 2018, when discussing Halloween, Anselmo told Williams and James that they shouldn't paint their faces white because they are Black.

92.     Anselmo seldom had a conversation with Black MBI workers where he didn't bring up their race in a disparaging manner.

93.     In addition to his comments about Black workers, Defendant Anselmo also referred to Arabs and Indian workers as, "sand niggers" and Hispanic workers as "spics."

94.     A few days before Christmas 2018 Anselmo came to the jobsite where Williams was working and loudly announced that he was "sick of these sand niggers."

95.     In approximately winter of 2018, Anselmo shouted, "These sandniggers are always calling my phone" in front of James.

96.     Anselmo was upset by Marshall, Jr.'s complaints about his racist behavior and would target him at the worksite, often flying into angry tirades about mundane matters or punishing Marshall, Jr. for behavior that Anselmo had instructed all the workmen at the site to perform.

97.     For example, in approximately February 2019, Marshall, Jr. was working on a jobsite where Anselmo was the foreman.  Anselmo told the workers to all go get coffee because the machines weren't working well.  When Marshall, Jr. returned from getting coffee, Anselmo began screaming at him that he was lazy and told him to go home.

98.     Marshall, Jr. called Thomas DeSousa and told him that he had just been cursed at and kicked off the jobsite by Anselmo for seemingly no reason.

99.     Thomas DeSousa told Marshall, Jr. not to worry about Anselmo and that he would "take care of it."

100.     Anselmo was not the only racist foreman promoted and protected at MBI.

101.     In approximately late March 2019, a coworker overheard a conversation between Anthony DeSousa and Kane, a high level MBI driller and foreman.  Anthony DeSousa and Kane were discussing staffing and Anthony DeSousa told Kane, "we are getting rid of all of the Blacks, all those Port Jefferson motherfuckers."

12

102.   On approximately April 2, 2019, Marshall, Jr. was terminated after Anselmo refused to speak to him or provide him with the location of the tools that he needed to complete the job that Marshall Jr. was scheduled to work on in Queens.

103.   In approximately June 2016, KC (last name unknown), an MBI foreman, called a Black worker a "stupid nigger."

104.   Williams objected to KC's use of the slur "nigger" and KC retorted that "anyone can be a nigger, and that it is not about being Black it is about being stupid."

105.   In early May 2019 KC called Williams a "stupid nigger."  Williams objected to Kane calling him a "nigger" and an argument ensued.  Plaintiffs' coworkers Jose (last name unknown) and Ed (last name unknown) witnessed the incident and deescalated the argument.

106.   KC often made racist remarks about Black workers.  These remarks were frequently witnessed by MBI owners.

107.   Approximately two weeks after objecting to KC calling him a "nigger", Williams was terminated.

108.   MBI pays a higher hourly wage rate to non-Black welders who lack welding certification than it does to Black workers who are certified welders.

109.   In approximately the first week of May 2018, Plaintiff James was working at a jobsite with foreman Marenko.

110.   Marenko had a large dog with him in his truck.

111.   Anthony DeSousa visited the jobsite and told Plaintiff James that he had better "watch out" because "Marenko's dog doesn't like Black people."

112.   Anthony DeSousa and Marenko laughed together at Anthony DeSousa's menacing remark and Plaintiff James was disturbed and felt threatened.

13

113.     In April 2019 a co-worker told Plaintiff James that he "need to get [his] shit together because they are firing all the Blacks."

114.     Plaintiff James was terminated in April 2019, shortly after being warned that MBI was firing "all the Blacks."

115.     After receiving notice that Plaintiffs had filed a Complaint alleging that Defendants discriminated and retaliated against Plaintiffs, MBI sent Plaintiffs' counsel a letter which stated that they intended to sue Plaintiffs for bringing discrimination and retaliation claims against them.

**FIRST CAUSE OF ACTION
FOR RACIAL DISCRIMININATION
VIOLATION OF SECTION 1981**

116.     Plaintiffs reallege and incorporate all allegations in all preceding paragraphs.

117.     By the acts and practices described above, including but not limited to creating a hostile work environment for Plaintiffs because of their race and ignoring their complaints of discrimination, Defendants impaired Plaintiffs' right to make and enforce contracts in violation of Section 1981.

118.     Plaintiffs were subjected to discrimination because they are Black.

119.     The harassment Plaintiffs endured was severe or pervasive and altered the conditions of their employment.

120.     Defendants knew or should have known of the discrimination and failed to remedy it.

121.     Defendants are liable as nongovernmental entities pursuant to Section 1981(c).

122.     Plaintiffs are now suffering will continue to suffer irreparable injury because of Defendants' discriminatory acts.

123.   Defendants acted intentionally and with malice and/or reckless indifference to Plaintiffs' statutory rights.

## SECOND CAUSE OF ACTION
### FOR RETALIATION
### VIOLATION OF SECTION 1981

124.   Plaintiffs reallege and incorporate all allegations in all preceding paragraphs.

125.   By the acts and practices described above, Defendants retaliated against Plaintiffs and impaired their right to make and enforce contracts in violation of Section 1981.

126.   Plaintiffs complaints constituted protected activities under Section 1981.

127.   Plaintiffs were subjected to materially adverse actions after they engaged in the above-described protected conduct.

128.   Defendants subjected Plaintiffs to the materially adverse actions because they engaged in protected activities under Section 1981.

129.   Defendants are liable as a nongovernmental entity pursuant to Section 1981(c).

130.   Plaintiffs are now suffering will continue to suffer irreparable injury and monetary damages because of Defendants' retaliatory acts.

131.   Defendants acted intentionally and with malice and/or reckless indifference to Plaintiffs' statutory rights.

## THIRD CAUSE OF ACTION
### FOR DISCRIMINATION
### VIOLATION OF THE NYSHRL

132.   Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

133.   By the actions described above, among others, Defendants discriminated against Plaintiffs on the basis of their race in violation of the NYSHRL.

134.     Defendants aided and abetted the discriminatory conduct of MBI and the other employees who acted on behalf of MBI to discriminate against Plaintiffs.

135.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of monetary damages and other relief.

**FOURTH CAUSE OF ACTION
FOR RETAILIATION
<u>VIOLATION OF THE NYSHRL</u>**

136.     Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

137.     By the actions described above, among others, Defendants discriminated against Plaintiffs on the basis of their race in violation of the NYSHRL.

138.     Defendants aided and abetted the discriminatory conduct of MBI and the other employees who acted on behalf of MBI to discriminate against Plaintiffs.

139.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of monetary damages and other relief.

**FIFTH CAUSE OF ACTION
FOR DISCRIMINATION
<u>VIOLATION OF THE NYCHRL</u>**

140.     Plaintiffs repeat, reiterate and re-allege each and every allegation in all of the preceding paragraphs.

141.     By the actions described above, among others, Defendants discriminated against Plaintiffs on the basis of race in violation of the NYCHRL.

142.     Defendants treated Plaintiffs less well than other employees on the basis of their race.

143.     Defendants, through their own conduct including that of their agents, managers, supervisors and employees, intentionally discriminated against Plaintiffs on the basis of their race.

144.     Any alleged non-discriminatory reason is no more than pretext intended to divert attention away from Defendants' true intentions.

145.     Defendants' aforementioned acts and omissions violated the NYCHRL.

146.     As a consequence of Defendants' actions and inactions Plaintiffs have been damaged emotionally and suffered economic loss.

147.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

148.     Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiffs are entitled to an award of punitive damages.

**SIXTH CAUSE OF ACTION
FOR RETALIATION
<u>VIOLATION OF THE NYCHRL</u>**

149.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

150.     By the actions described above, among others, Defendants retaliated against Plaintiffs in violation of the of the NYCHRL.

151.    Defendants and their agents and those under their supervision and control engaged in purposeful retaliation against Plaintiffs' good faith complaints of discrimination by engaging in conduct  which could reasonably deter a person from engaging in protected activity.

152.    Any alleged non-retaliatory reason is no more than pretext intended to divert attention away from Defendants' true intentions.

153.    Defendants' aforementioned acts and omissions violated the NYCHRL.

154.    Defendants, through their own conduct including that of their agents, managers, supervisors and employees, intentionally discriminated and retaliated against Plaintiffs on account of their complaints regarding discrimination based on race, in violation of the NYCHRL.

155.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

156.    As a consequence of the actions and inactions of Defendants Plaintiffs have been damaged emotionally and suffered economic loss.

157.    Due to the acts complained of Plaintiffs are entitled to compensatory damages in an amount to be determined at trial, together with appropriate interest thereon; and an award of attorney's fees, expert fees, costs and disbursements.

158.    Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiffs are entitled to an award of punitive damages.

## DEMAND FOR JURY TRIAL

159.    Plaintiff demands a trial by jury for all issues in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.      Compensatory damages;

B.      Punitive damages;

C.      Attorneys' fees and costs of the action;

D.      Pre-judgment interest and post-judgment interest as provided by law;

E.      A declaratory judgment that the practices complained of are unlawful; and

F.      Such other injunctive and equitable relief as this Court shall deem just and proper.

Dated: Melville, New York
        June 13, 2022

                                Respectfully submitted,

                                **KESSLER MATURA P.C.**

                                By: /s/ Tana Forrester
                                        Troy L. Kessler
                                        Tana Forrester
                                534 Broadhollow Road, Suite 275
                                Melville, New York 11747
                                (631) 499-9100

                                ***Attorneys for Plaintiffs***